J-S27002-25

2025 PA Super 257

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BENIAH GRIFFIN-MORGAN :
:
Appellant : No. 1892 EDA 2024

Appeal from the Judgment of Sentence Entered February 9, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0002689-2022

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.*

OPINION BY STABILE, J.:                    **FILED NOVEMBER 14, 2025**

Appellant, Beniah Griffin-Morgan, seeks review of the judgment of sentence entered by the Court of Common Pleas of Philadelphia County (trial court).  In 2022, Appellant was found guilty after a non-jury trial of several offenses related to a shooting, including aggravated assault (18 Pa.C.S.A. § 2702(a)(1)).  He was sentenced to an aggregate prison term of five to 15 years.  In this appeal, Appellant contends that, because he was never identified as a shooter, the evidence that he committed aggravated assault is legally insufficient.  We affirm.

This case arises from an incident that took place in Philadelphia on August 4, 2021.  On that day, at about 5:30 p.m., police responded to East Lehigh Avenue, where the sounds of gunshots had been reported.  The victim, Alexander Szabo, was not present at the scene, having already walked to a

_____

* Former Justice specially assigned to the Superior Court.

hospital despite sustaining a bullet wound to his chest. After the victim had recovered enough to speak to the police, he recounted that while standing on East Lehigh Avenue, he heard gunfire, followed by an unidentified person yelling, "Run!" N.T. Trial, 11/21/2022, at 12-13. The victim did not see either the shooting or the person who shot him.

Nevertheless, Appellant was linked to evidence found at the crime scene, where police recovered four 9mm fired cartridge casings and an iPhone with a black case. The police also obtained a surveillance video recording of an area about two blocks away from where the victim was shot. The video footage showed that, moments before the shooting broke out, two men clad in dark jackets walked toward East Lehigh Avenue from Coral Street. Upon reaching East Lehigh Avenue, the two men took off their jackets and placed them on the ground near a parked car. The video further showed that, just after the shooting ended, the same two men who had dropped off their jackets walked back toward Coral Street to retrieve them. The faces of both men could clearly be seen in this footage.

While swabbing the abandoned iPhone for DNA, a police detective observed in plain view several Instagram messages on the device's home screen. The messages were sent to a user named, "dareaper2nd." A search warrant of the iPhone was issued, and when police unlocked the device, they learned that Appellant was its owner. They also found that Appellant had several active accounts on Instagram, including two named "30hotshells" and "da[-]reaper2nd." N.T. Trial, 11/21/2022, at 20–23.

- 2 -

On the "30 Hot Shells" account, police viewed a video that Appellant had posted in which he was sitting in a car brandishing a handgun and wearing a black North Face jacket. This was significant because the video was posted only about one hour before the subject shooting took place. Further, the jacket worn by Appellant in the video appeared to match the one worn by one of the two men seen in the surveillance footage walking to, and away from, the location of the shooting. *See id*., at 35-36.

Additionally, police reviewed numerous private messages sent from the "30 Hot Shells" account on the very day of the shooting. In one such message, Appellant stated to another Instagram user that police had recovered his phone after he had dropped it on East Lehigh Street:

> I lost my phone. I got into a bang out, Bro. I dropped it on the scene. The 25th District got it, Bro.

*Id*., at 37. Appellant had attached to the message a screenshot of the Find My iPhone application; the screenshot showed that Appellant's iPhone was in police custody.

He sent other messages saying that "[he] got into a shootout, lost [his] phone," "[he] dropped [his] phone on the scene," and "[t]he law got it." *Id*., at 40. Similarly, Appellant used his "Da Reaper 2nd" Instagram account to send a message stating that he had dropped his phone on East Lehigh Ave. *See id*., at 38. Then, on August 22, 2021, police viewed a new Instagram posting on the "30 Hot Shells" account in which Appellant was attempting to

sell a 9mm automatic pistol. The empty cartridge casings found at the crime scene were of the same caliber. *See id*., at 41.

Police arrested Appellant and he was charged with aggravated assault, weapons offenses, and other related charges. At the subsequent bench trial, one of the investigating officers, Detective Mark Johnson, testified to the above facts. The Commonwealth also introduced into evidence the surveillance footage of the two men seen walking to, and away from, the shooting, as well as the social media posts which police used to identify Appellant. Detective Johnson testified that it was "crystal clear" that Appellant was the man seen wearing a black jacket in the surveillance video recording. *See id*., at 31, 35–36, 56–57.

The trial court, sitting as the trier of fact, found Appellant guilty of aggravated assault (18 Pa.C.S.A. § 2702(a)(1)), three violations of the Uniform Firearms Act (18 Pa.C.S.A. §§ 6105, 6106, and 6108), possession of an instrument of crime (18 Pa.C.S.A. § 907), and recklessly endangering another person (18 Pa.C.S.A. § 2705). He was sentenced to a total term of five to 15 years.

Appellant timely filed a notice of appeal, and in his brief, he now raises a single issue:

> Was the evidence put forth at trial sufficient to demonstrate that it was [Appellant] who shot the complaining witness and thus sustain a conviction for aggravated assault?

Appellant's Brief, at 6 (numbering omitted).

- 4 -

The chief claim asserted by Appellant here is that the Commonwealth presented insufficient evidence of aggravated assault because his identity as one of the individuals involved in the shooting was completely unproven. Appellant argues that the evidence, at most, established his presence near the scene of the shooting, but not his role as one of the perpetrators. **See** Appellant's Brief, at 8-13.

"A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). "In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." **Commonwealth v. Smyser**, 195 A.3d 912, 915 (Pa. Super. 2018) (quoting **Commonwealth v. Brooks**, 7 A.3d 852, 857 (Pa. Super. 2010)). "Evidence of identification need not be positive and certain to sustain a conviction." **Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (internal citation omitted).

The sufficiency of the evidence poses a question of law, subject to a *de novo* standard of review. **See Smyser**, 195 A.3d at 915 (citing **Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015)). For challenges to the legal sufficiency of evidence, we apply the following standard:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to

enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa. Super. 2003)).

In the present case, we find that the evidence of Appellant's identity was legally sufficient to sustain his aggravated assault conviction. Viewed in the most favorable light to the Commonwealth, the evidence adduced at trial enabled the finder of fact to determine that Appellant was one of the individuals who discharged a handgun in the vicinity of the victim.[1]

_____

[1] Appellant could be found guilty of aggravated assault even if the bullet that struck the victim was discharged from the weapon of a third party. The crime of aggravated assault only requires that the defendant attempted to cause "serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Accordingly, Appellant's mere participation in the shooting would be sufficient. *See Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995) (evidence
*(Footnote Continued Next Page)*

Appellant could be seen walking to the location of the shooting moments before it began, and stopping briefly to remove the jacket he was wearing. He could also be seen leaving that area just after the incident had ended, stopping briefly again to pick up the discarded jacket. Appellant dropped his phone at the scene of the shooting, and it was recovered shortly thereafter by police. Despite learning that his phone was in police custody, Appellant made no effort to collect it. The fact-finder could reasonably infer that this conduct demonstrated Appellant's consciousness of guilt.

Additional evidence implicated Appellant even more directly. Police retrieved social media posts by Appellant in which he *admitted* to dropping his phone after he "got into a shootout." N.T. Trial, 11/21/2022, at 40. Not long after, police learned that Appellant was attempting to sell a handgun that fired the same caliber of bullet as those discharged in the area where the victim was shot.[2]

All of these facts constituted both direct and circumstantial evidence that Appellant took part in the subject shooting and committed an aggravated

---

of aggravated assault legally sufficient where "defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions").

[2] It was impossible for the police to learn the caliber of the bullet that struck the victim because surgeons were unable to safety remove the bullet from the victim's chest.

assault against the victim. Thus, his sufficiency claim has no merit, and the judgment of sentence must be upheld.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2025