J-S17001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN J. WATTS | : | |
| | : | |
| Appellant | : | No. 2428 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007258-2023

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.: **FILED MAY 8, 2026**

Shawn J. Watts (Appellant) appeals from the judgment of sentence imposed following his non-jury convictions of two counts each of simple assault, recklessly endangering another person (REAP), and driving under the influence (DUI) – general impairment;[1] and one count each of aggravated assault, aggravated assault by vehicle while DUI, and careless driving.[2] We affirm in part and reverse in part, vacate the judgment of sentence, and remand for resentencing.

The trial court summarized the relevant factual history as follows:

On or about September 15, 2023, around 8:10 p.m., [] Shanik Baxter exited the IGA Supermarket on the corner of Wayne Avenue and Chelten Avenue in the City of Philadelphia. Ms. Baxter

---

[1] 18 Pa.C.S.A. §§ 2701(a), 2705; 75 Pa.C.S.A. § 3802(a)(1).

[2] 18 Pa.C.S.A. § 2702(a)(1); 75 Pa.C.S.A. §§ 3735.1(a), 3714(a).

was walking with her sister, Annie, and cousin[,] A.H.[,] and his unnamed brother. As the group crossed Wayne Avenue, Ms. Baxter heard the screech of car tires and jumped back, grabbing A.H. Ms. Baxter then heard the continuous revving of an engine as she tossed A.H. out of the way. As she tossed A.H., [Appellant's] vehicle struck [Ms. Baxter] and knocked her to the ground.

Approximately eight minutes after the accident, several bystanders surrounded Ms. Baxter and helped her out of the street. [Appellant] … attempted to flee the scene in his vehicle, a silver Chevy Impala. [Appellant] belligerently yelled that "it was only an accident" and that he didn't understand why everybody was "so upset." Ms. Baxter at that time was unable to stand up due to [] pain in her left leg. Approximately eight [] people assisted Ms. Baxter following the accident. [Ms. Baxter] was then transported to Einstein Hospital and later transferred to Temple Hospital, where she was diagnosed with a broken kneecap. A.H. was transported to Saint Christopher's Hospital[,] where he was treated for scrapes from his head to his leg.

Several bystanders contacted the Philadelphia Police Department ("PPD") to report the incident. PPD Officers Stacy Little and Timothy Camlin responded to multiple radio calls about the accident. Upon the [officers'] arrival to the scene, Officer Little observed [Appellant] attempt[] to push [damaged] pieces of his vehicle back together. [Appellant] attempted to push his loose front-end bumper back onto the car. Officer Little also observed a partially empty tequila bottle in the backseat of [Appellant's] vehicle. Officer Camlin and other officers noted the odor of alcohol. The bystanders then informed Officer Camlin that [Appellant] was operating the vehicle that struck Ms. Baxter and A.H. [Appellant] was placed under arrest and transported to the hospital.

PPD Officer Joseph DiGangi interviewed [Appellant] at the hospital. [Appellant] was handcuffed to the bed and read his DL-26B PennDOT [implied consent] warnings. [Appellant] was acting belligerently, being loud and aggressive. [Appellant] refused to sign the DL-26B and continuously yelled over Officer DiGangi's reading of the warnings.

Trial Court Opinion, 12/10/24, at 1-3 (record citations omitted; some capitalization and punctuation modified).

Following a bench trial on June 6, 2024, the trial court convicted Appellant of the above-described offenses. The trial court deferred sentencing and ordered the preparation of a presentence investigation report (PSI). On August 23, 2024, the trial court sentenced Appellant, for his aggravated assault conviction, to 5 to 10 years' imprisonment, followed by 3 years' probation. For his aggravated assault by vehicle while DUI conviction, the trial court imposed 10 years of probation, to run concurrently with his aggravated assault sentence. For the remaining convictions, the trial court entered a finding of guilt without further penalty. Appellant filed a timely post-sentence motion, which the trial court denied.

This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.[3]

_____

[3] Appellant's prior counsel, George S. Yacoubian, Jr., Esquire (Attorney Yacoubian), filed in this Court an **Anders** brief on December 14, 2024, and a petition to withdraw from representation two days later. **See Anders v. California**, 386 U.S. 738 (1967). On June 6, 2025, we denied Attorney Yacoubian's petition to withdraw, as his **Anders** brief was substantially deficient. **See Commonwealth v. Watts**, 343 A.3d 198, 2428 EDA 2024 (Pa. Super. 2025) (unpublished memorandum at 4-6) (noting that Attorney Yacoubian failed to refer to anything in the record that could arguably support the appeal, and essentially argued against Appellant's interest). We therefore directed Attorney Yacoubian to file a proper **Anders** brief or an advocate's brief. **See id.** (unpublished memorandum at 6). Attorney Yacoubian subsequently filed a new **Anders** brief, which remained substantively deficient. Accordingly, we vacated Attorney Yacoubian's appointment and
*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issues for review:

A. Whether the evidence was insufficient to sustain [Appellant's] convictions for aggravated assault, aggravated assault by vehicle while DUI, DUI, simple assault, and [REAP], where the Commonwealth failed to prove the requisite *mens rea* beyond a reasonable doubt[?]

B. Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion[,] where the verdicts for aggravated assault, aggravated assault by vehicle while DUI, DUI, simple assault, and [REAP] were against the weight of the evidence[?]

C. Whether the sentencing court abused its discretion by imposing an aggregate sentence of five to ten years' incarceration[,] where the sentence was unnecessarily harsh and excessive in relation to the gravity of the offenses and failed to adequately consider [Appellant's] rehabilitative needs and the fundamental purposes of sentencing[?]

Appellant's Brief at 4-5 (issues reordered).

In his first claim, Appellant challenges the sufficiency of the evidence supporting his convictions.[4] *See id.* at 17-24.

A sufficiency challenge "is a question of law, for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Packer**, 168 A.3d 161, 166 (Pa. 2017). When we review a challenge to the sufficiency of the evidence,

_____

remanded the case to the trial court for appointment of new counsel. **See** Order, 8/5/25. The trial court appointed Jessica C. Mann, Esquire, who filed an advocate's brief on Appellant's behalf.

[4] Appellant does not challenge his careless driving conviction.

- 4 -

our applicable standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that[] the Commonwealth's burden may be satisfied by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Dewald*, 317 A.3d 1020, 1038 (Pa. Super. 2024) (internal citations, quotation marks, brackets, and paragraph break omitted).

We first address Appellant's conviction of DUI – general impairment. Appellant argues his DUI conviction was not supported by sufficient evidence, as "the Commonwealth presented no chemical testing, no field sobriety tests, and no expert testimony." Appellant's Brief at 22. According to Appellant, his slurred speech, confusion, and disorientation could plausibly be the result of the bystanders' assault on him prior to the officers' arrival. *Id.* at 22-23.[5]

_____

[5] Appellant's argument on this point is minimally developed, and includes a single case citation. *See* Appellant's Brief at 22-23; *see also* Pa.R.A.P. 2119(a) (providing that the argument shall include "such discussion and citation of authorities as are deemed pertinent.").

Appellant was convicted of DUI – general impairment under section 3802(a)(1) of the Vehicle Code, which provides as follows:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).  Thus, "[t]he Commonwealth must establish that the defendant (1) was operating a motor vehicle (2) after imbibing a sufficient amount of alcohol such that he was rendered incapable of safely operating the motor vehicle." *Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020).

Appellant does not dispute that he drove or operated the vehicle involved in the accident.  Instead, he argues the evidence fails to support the finding that he was incapable of safely operating the vehicle at that time.

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include[,] but are not limited to[,] the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.  **Blood alcohol level** may be added to this list, although it **is not necessary** ….

*Commonwealth v. Luberto*, 344 A.3d 41, 47 (Pa. Super. 2025) (citation omitted; emphasis added).  Our Supreme Court has also concluded that the occurrence of an accident itself may constitute evidence that an offender drove

while he was incapable of doing so safely. ***Commonwealth v. Segida***, 985 A.2d 871, 880 (Pa. 2009).

The trial court concluded Appellant's DUI conviction was supported by sufficient evidence, citing Officer Little's observation of a partially empty tequila bottle in the back of Appellant's vehicle, as well as Appellant's behavior after he was transported to the hospital. ***See*** Trial Court Opinion, 12/10/24, at 11. The trial court's findings are supported by the record, and its conclusion is sound.

Officer Little, one of the officers who reported to the accident scene, testified during the bench trial that when she approached Appellant, "[h]e appeared disheveled. He had slurred speech. He was having a hard time providing the paperwork[, *i.e.*, his identification]." N.T., 6/6/24, at 42. Officer Little also observed Appellant attempting to "push pieces of the car back together." ***Id.*** at 43. When Officer Little looked into Appellant's vehicle, she observed a partially empty tequila bottle in the back seat. ***Id.*** at 45.

Officer Camlin, who arrived on the scene with Officer Little, testified that Appellant's eyes were glassy. ***Id.*** at 56. Additionally, Officer Camlin testified that he smelled an odor of alcohol during his interaction with Appellant. ***Id.***

The Commonwealth also presented the testimony of Officer DiGangi, the officer who met Appellant at the hospital and read PennDOT's DL-26B implied consent warnings to Appellant. ***Id.*** at 62. Officer DiGangi testified that

Appellant was "acting belligerent." *Id.* at 63. Officer DiGangi described Appellant as "loud and aggressive." *Id.*

Viewed in the light most favorable to the Commonwealth as the verdict winner, the above-described testimony, together with the occurrence of an accident, was sufficient to support Appellant's DUI conviction. *See Luberto*, 344 A.3d at 47 (concluding sufficient evidence supported the appellant's DUI – general impairment conviction where the appellant was the driver of a vehicle involved in an accident and displayed numerous indicia of intoxication, including slurred speech, bloodshot eyes, and unsteadiness, and a responding police trooper noted the odor of alcohol); *Segida*, *supra*.

As to each of his remaining convictions, Appellant claims the Commonwealth failed to establish the requisite *mens rea* beyond a reasonable doubt. Appellant's Brief at 17-18. Appellant asserts he did not intentionally strike Ms. Baxter. *Id.* at 18, 23. Additionally, Appellant points to a lack of physical evidence and related accident reconstruction testimony. *Id.* at 19-20. Appellant identifies what he believes to be inconsistent descriptions, offered by Ms. Baxter, of the sounds she heard just before the accident:

> [Ms. Baxter] testified that she heard a "screech" before being struck[,] but also stated that she did not hear braking and instead perceived the engine revving continuously. Those descriptions are materially inconsistent. A "screech" is commonly associated with braking or tire friction caused by deceleration, while continuous engine revving suggests acceleration without braking. The Commonwealth presented no testimony reconciling these conflicting accounts, and no evidence explaining how both phenomena could have occurred simultaneously in the manner alleged.

*Id.* at 19 (citations and paragraph break omitted).

We first address Appellant's argument as it relates to his aggravated assault conviction, since it requires the highest degree of culpability. The trial court convicted Appellant of aggravated assault under section 2702(a)(1) of the Crimes Code, which provides as follows:

**(a) Offense defined.--**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury **intentionally, knowingly or recklessly** under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1) (emphasis added). In order to establish aggravated assault under a theory of recklessness, "the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault." *Commonwealth v. Miller*, 955 A.2d 419, 422 (Pa. Super. 2008); *see also Packer*, 168 A.3d at 168 (stating that "a person who acts negligently or with ordinary recklessness to cause a person to suffer serious bodily injury … has not committed … aggravated assault").[6]

"Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Miller*, 955

---

[6] Pennsylvania courts have consistently explained that "[t]he *mens rea* required for a conviction of aggravated assault, like third-degree murder, is malice; only the result of the crimes differ." *Packer*, 168 A.3d at 167.

A.2d at 422 (citation omitted); *see also **Commonwealth v. Peters***, ___ A.3d ___, 2026 WL 1206117 at *9 (Pa. 2026) (clarifying that in both DUI and non-DUI cases, "malice exists if the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm.").

> For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury.

***Packer***, 168 A.3d at 170 (quoting ***Commonwealth v. O'Hanlon***, 653 A.2d 616, 618 (Pa. 1995)).

Due to this heightened degree of culpability, "[m]otor vehicle crashes seldom result in an aggravated assault conviction[.]" ***Miller***, 955 A.2d at 422. Indeed, "the decision to drive while under the influence of alcohol and/or a controlled substance does not, **standing alone**, constitute malice." ***Packer***, 168 A.3d at 170 (emphasis added); *see also **id.*** (stating that "the *mens rea* generally associated with the decision to drive under the influence is ordinary recklessness and does not constitute malice."). However, a court must consider the totality of the facts and attendant circumstances. ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1219 (Pa. Super. 2011) ("Malice may be inferred by considering the totality of the circumstances."); *see also **Miller***, 955 A.2d at 422.

In **O'Hanlon**, the appellant drove his vehicle while intoxicated, ran a red light, and struck another vehicle. **O'Hanlon**, 653 A.2d at 616. Both the appellant and the other driver were seriously injured. **Id.** On review, our Supreme Court concluded the evidence did not establish the requisite *mens rea* to support the appellant's aggravated assault conviction. **Id.** at 618. Though the appellant drove while intoxicated, "[t]he record was not clear as [to] whether he even saw the victim's car coming." **Id.**; **see also id.** ("Serendipity, not intention, placed the victim in his path when he drove through the red light."). The **O'Hanlon** Court reiterated that aggravated assault is "the functional equivalent of a murder," and stated the appellant's conduct was "not so egregious as to find in homicide its analogue[.]" **Id.**

In **Commonwealth v. Comer**, 716 A.2d 593 (Pa. 1998) (*superseded by statute on other grounds*), the appellant drank four or five beers and ingested at least one "downer" before driving his vehicle at speeds exceeding the speed limit. **Id.** at 595. The appellant lost control of his vehicle, crashed into a bus stand, then struck a brick wall. **Id.** During the accident, the appellant hit two individuals who were waiting for a bus, killing one and injuring the other. **Id.**; **see also id.** (noting the absence of skid marks on the pavement or other evidence indicating the appellant quickly applied his brakes). Our Supreme Court stated that the fact of the appellant's intoxication was not controlling, and concluded the appellant's actions did not constitute aggravated assault. **Id.** at 596-97.

While motor vehicle crashes do not frequently result in aggravated assault convictions, *Miller*, 955 A.2d at 422, our courts have upheld such convictions where the circumstances demonstrate something more than the mere fact of intoxication.

For instance, in *Packer*, the defendant "huffed" an intoxicant "immediately prior to and while operating a vehicle on a public highway." *Packer*, 168 A.3d at 171. As she had used the intoxicant previously, the defendant knew the effects of the intoxicant on her "were immediate, debilitating and persisted for ten to fifteen minutes following inhalation. Moreover, she knew that huffing had caused her to lose consciousness on other occasions in the past." *Id.* (record citations omitted). Nevertheless, the defendant made the "conscious and informed decision" to inhale the intoxicant and began to drive her vehicle. *Id.* The defendant soon lost consciousness, lost control of her vehicle, and struck another vehicle. *Id.* The driver of the other vehicle was killed as a result of the accident. *Id.*

Our Supreme Court concluded that, under the circumstances, the defendant's conduct was more than ordinary negligence. *Id.* at 171. Instead, "the evidence supported a finding that [the defendant] acted with the requisite malice" to support her aggravated assault and third-degree murder convictions. *Id.* at 172. Because the defendant knew the effects of huffing intoxicant were immediate, and she had a history of losing consciousness as a result, "she could reasonably anticipate that serious bodily injury or death

- 12 -

would be the likely and logical consequence of her actions[,] but the consequence was ignored." *Id.* at 171 (citation, ellipses, and some brackets omitted).

Recently, in **Peters**, our Supreme Court concluded the totality of the circumstances demonstrated that the appellant acted with the requisite malice to sustain his convictions of third-degree murder and aggravated assault. **Peters**, 2026 WL 1206117 at *15. After an evening of drinking alcohol, and "[a]lthough less risky means of transportation were available to him," *id.* at *14, the appellant returned to his vehicle and attempted to drive himself home. The appellant struggled with both the payment kiosk and the mechanical arm in the parking garage before he chose to lift (and break) one of the mechanical arms blocking his exit. *Id.* at *1. The appellant then proceeded toward the highway. *Id.* at *2. Video surveillance and witness reports indicated the appellant's vehicle swerved on the roadway, randomly changed speeds, and nearly sideswiped another vehicle. *Id.* Ultimately, the appellant's vehicle collided with a van stopped on the side of the roadway, resulting in the death of two passengers; the two survivors suffered serious injuries. *Id.* at *2.

As the **Peters** Court emphasized,

> [the appellant] received multiple signs he was too impaired to drive safely: an offer to drive him home from a co-worker, his destruction of the mechanical arm at the parking garage, near miss of another car, inability to keep a consistent speed, and twice passing his exit.

*Id.* at *15. "Most egregious, though, [was the appellant's] decision to take his eyes off the road" to reach for something on the floor of the vehicle while traveling at speeds reaching 115 miles per hour. *Id.* In sum, the Court concluded, "[w]hen [the appellant] ignored the numerous signs he was too impaired to drive, he consciously disregarded the unjustified and extremely high risk that he might cause death or serious bodily injury." *Id.*

> Here, the trial court concluded Appellant's conduct was reckless
>
> because[] he made the decision to drive his vehicle while under the influence of alcohol[,] which showed conscious disregard to the substantial[,] unjustifiable risk that an accident of this nature could result. Further, prior to hitting Ms. Baxter and A.H., [Appellant] revved his engine instead of yielding to the pedestrians crossing the street. At no point prior to or immediately following the accident did [Appellant] attempt to brake. After [Appellant] hit the two victims, he attempted to flee the scene and was only stopped due to the vigilance of several witnesses.

Trial Court Opinion, 12/10/24, at 7 (record citations omitted). From the foregoing reasoning, it is clear the trial court incorrectly applied the definition of ordinary recklessness. *See Packer*, 168 A.3d at 169 ("[A] person who acts negligently or with ordinary recklessness to cause a person to suffer serious bodily injury … has not committed … aggravated assault…."); *see also* 18 Pa.C.S.A. § 302(b)(3) (defining recklessness).

Upon review, we conclude the evidence, when viewed in the light most favorable to the Commonwealth, does **not** establish that Appellant acted with the requisite malice to sustain his aggravated assault conviction. As set forth above, the evidence supports the trial court's finding that Appellant was

impaired at the time he struck Ms. Baxter with his vehicle. However, the facts of this case are more akin to **O'Hanlon** and **Comer**, in that the evidence here establishes little more than the fact of Appellant's intoxication. **See O'Hanlon**, 653 A.2d at 618; **Comer**, 716 A.2d at 595-97; **see also Packer**, 168 A.3d at 170 (stating that "the decision to drive while under the influence of alcohol and/or a controlled substance does not, **standing alone**, constitute malice." (emphasis added)).

The testimony concerning Ms. Baxter's observations of Appellant's vehicle immediately prior to the accident was extremely limited. Ms. Baxter testified that on the evening of September 15, 2023, she and her cousin were crossing the street toward a bus stop. N.T., 6/6/24, at 17. Ms. Baxter described hearing "a car out of control." **Id.** Ms. Baxter testified that she heard a "continuous revving of the engine[.]" **Id.** at 19-20; **see also id.** at 35 (Ms. Baxter stating she believed the vehicle was accelerating as it approached).

However, Ms. Baxter did not have the time or opportunity to observe Appellant's driving prior to the accident. Further, although there were several witnesses to the accident, the Commonwealth did not present the testimony of any eyewitnesses.

The record before us simply fails to demonstrate conduct, beyond the fact of Appellant's intoxication, which would establish that Appellant acted maliciously. There is no evidence that Appellant ignored a known and

particularized risk, as did the appellant in **Packer**. **See Packer**, 168 A.3d at 171 (concluding the appellant acted with malice when she chose to drive while intoxicated, where her previous use of the same intoxicant resulted in loss of consciousness). Absent testimony from additional witnesses who observed Appellant's driving earlier in the evening, there is no evidence that Appellant's actions demonstrated sustained recklessness which "virtually guaranteed some manner of accident would occur." **Peters**, 2026 WL 1206117 at *15 (citing **Commonwealth v. Peters**, 320 A.3d 1231, 1243 (Pa. Super. 2024) (*en banc*) (brackets omitted)). Nor did the Commonwealth present evidence tending to show that Appellant saw Ms. Baxter crossing the street and made the conscious decision to proceed. **O'Hanlon**, 653 A.2d at 483 ("Serendipity, not intention, placed the victim in his path when he drove through the red light."). **Cf. Dunphy**, 20 A.3d at 1219-20 (concluding the appellant acted with the requisite malice to support his third-degree murder conviction, arising from a fatal DUI-related accident, where the appellant drove at an excessive speed in a street where pedestrians were present; the appellant admitted he saw pedestrians in front of him but nevertheless accelerated "to make the light"; there was no evidence explaining the appellant's failure to stop; and the appellant fled after hitting the pedestrian).

While we do not condone Appellant's behavior, we conclude the evidence was insufficient to prove Appellant acted with the requisite malice to support his aggravated assault conviction. Accordingly, we reverse Appellant's

conviction of aggravated assault. Additionally, because the reversal of this conviction (the lead conviction in the trial court's sentence and the sole conviction on which Appellant received a prison sentence) has the potential to upset the court's sentencing scheme, we vacate Appellant's entire judgment of sentence, and remand for resentencing. *See Commonwealth v. McCamey*, 154 A.3d 352, 359 (Pa. Super. 2017) (after this Court held the trial court imposed an illegal sentence in a multi-count case, vacating and remanding for resentencing on all counts due to the potential disruption to the trial court's sentencing scheme).

We now turn to the sufficiency of the evidence supporting Appellant's remaining convictions. The Crimes Code defines the varying levels of criminal culpability, in relevant part, as follows:

**(b) Kinds of culpability defined.--**

\* \* \*

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

(4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him,

- 17 -

involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b).

The Vehicle Code defines the offense of aggravated assault by vehicle while DUI as follows:

Any person who **negligently** causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree with the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1(a) (emphasis added). Notably, the offense of aggravated assault by vehicle while DUI requires a lower level of culpability than aggravated assault. *See Commonwealth v. McHale*, 858 A.2d 1209, 1217 (Pa. Super. 2004) ("In light of the reality that most motor vehicle accident cases, even those caused by a drunk driver, will not evidence the *mens rea* of malice, the legislature has enacted lesser offenses that can be charged, which were specifically designed to address a situation where malice is lacking but where heightened criminal punishment is deemed appropriate, such as aggravated assault by vehicle while [DUI]….").

The trial court also convicted Appellant of simple assault, which is defined as follows:

**(a) Offense defined.--**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or **intentionally, knowingly or recklessly** causes bodily injury to another;

(2) **negligently** causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]

....

18 Pa.C.S.A. § 2701(a) (emphasis added).[7]  "[D]riving under the influence of an intoxicating substance does not establish recklessness *per se*; there must be other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury that is consciously disregarded."  ***Commonwealth v. Schmohl***, 975 A.2d 1144, 1148 (Pa. Super. 2009) (citation omitted).

Further, the offense of REAP is defined as follows:

A person commits a misdemeanor of the second degree if he **recklessly** engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705 (emphasis added).

In its opinion, the trial court concluded that the evidence established that Appellant acted both recklessly and negligently.  ***See*** Trial Court Opinion, 12/10/24, at 8, 10; ***see also id.*** at 10 (acknowledging that Appellant's conduct was "not seemingly intentional").  As we discussed *supra*, the evidence supported Appellant's DUI conviction.  In addition to driving while impaired, Appellant drove into an intersection where two pedestrians were

---

[7] The criminal information filed by the Commonwealth did not specify the subsection under which it intended to charge Appellant, and the trial court's disposition form indicates only a finding of guilty under section 2701(a).

- 19 -

crossing the street. *See* N.T. 6/6/24, at 18, 28 (Ms. Baxter testifying that when she started crossing the street with A.H., she had the right-of-way). Despite the presence of pedestrians in the intersection, Appellant did not apply his brakes or attempt to slow down. *See id.* at 18 (Ms. Baxter stating that Appellant did not yield); *see also id.* at 19-20 (Ms. Baxter testifying that she did not hear the vehicle braking, and heard "continuous revving of the engine"), 35 (indicating the vehicle "was accelerating the whole time"). Following the accident, Appellant attempted to flee the scene, but he was stopped by several bystanders. *Id.* at 21-22.

We conclude the evidence of Appellant's impairment, together with his failure to slow down or yield for pedestrians crossing an intersection, and his attempt to flee following the accident, sufficiently established that Appellant's conduct was both reckless and negligent. *See generally Dunphy*, *supra* (in evaluating the appellant's *mens rea* during a motor vehicle crash, considering his flight from the scene as part of the totality of the circumstances); *see also Commonwealth v. Carter*, 320 A.3d 140, 149 (Pa. Super. 2024) ("[W]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis of a conviction in connection with other proof from which guilty may be inferred.").

Thus, the Commonwealth established that Appellant acted with the requisite *mens rea* to sustain his convictions of aggravated assault by vehicle

while DUI, simple assault, and REAP. *See Schmohl*, 975 A.2d at 1148-49 (concluding evidence was sufficient to establish the appellant consciously disregarded a substantial and unjustifiable risk that his conduct would result in serious injury to another—and to sustain his convictions of REAP, reckless driving, and aggravated assault with a vehicle while DUI—where the appellant "consumed an excessive amount of alcohol, sped while DUI, failed to utilize his high beams and carelessly drove across a fog line, directly striking the victim with forceful impact"); *see also Commonwealth v. Sullivan*, 864 A.2d 1246, 1250 (Pa. Super. 2004) (upholding convictions of REAP and simple assault, and concluding evidence was sufficient to establish the appellant's recklessness where the appellant "drove an unfamiliar route while intoxicated and proceeded to drive a quarter mile in the wrong direction on an off-ramp"). Appellant's remaining sufficiency claims therefore lack merit.

In his second claim, Appellant argues his convictions were against the weight of the evidence.[8]  *See* Appellant's Brief at 13-17.  Regarding his conviction of aggravated assault by vehicle while DUI, Appellant claims the Commonwealth relied "almost exclusively on [Ms. Baxter's] subjective interpretation of the event, rather than objective proof of extreme

_____

[8] Appellant does not challenge the weight of the evidence supporting his careless driving conviction.  Additionally, as we have determined that Appellant's aggravated assault conviction was not supported by sufficient evidence, we need not consider the weight of the evidence supporting that conviction.

recklessness." ***Id.*** at 14. Instead, Appellant argues, the evidence established "at most a traffic collision at a congested, obstructed intersection…." ***Id.***

As to his DUI conviction, Appellant points out that he was assaulted by bystanders, and argues his physical characteristics could be attributed to the assault, rather than his intoxication. ***Id.*** at 16. Finally, concerning his simple assault and REAP convictions, Appellant asserts the occurrence of injury cannot, by itself, support a conclusion that he disregarded a risk to pedestrians. ***Id.*** at 16-17.

Our review of a challenge to the weight of the evidence is limited:

> [O]ur standard of review for a weight-of-the-evidence claim is an abuse of discretion. … An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Douglas***, 346 A.3d 825, 831 (Pa. Super. 2025) (citations, quotation marks, brackets, and paragraph break omitted).

"To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Arias***, 286 A.3d 341, 352 (Pa. Super. 2022) (citation omitted). As this Court has explained,

> [a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have

- 22 -

arrived at a different conclusion.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* (citation omitted).  "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

In its opinion, the trial court reiterated that it was the factfinder in Appellant's bench trial.  **See** Trial Court Opinion, 12/10/24, at 4.  The trial court found the testimony of the Commonwealth's witnesses (Ms. Baxter and Officers Little, Camlin, and DiGangi) to be "wholly credible" and emphasized that Appellant offered no contradictory testimony.  *Id.* at 5.  Additionally, the trial court indicated it had reviewed footage from the body-worn cameras of Officers Little and DiGangi.  *Id.*  The trial court concluded its verdict was not against the weight of the evidence.

Upon review, we discern no abuse of the trial court's discretion. Appellant baldly suggests the evidence "equally supports competing inferences."  Appellant's Brief at 15.  However, Appellant cites no particular facts which, he believes, the trial court ignored or weighed incorrectly.  **See** ***Arias***, 286 A.3d at 352 ("A new trial should not be granted because of a mere conflict in the testimony").  The trial court, as fact finder, was "free to believe all, none, or some of the evidence" and to assess the credibility of the

witnesses. ***Commonwealth v. Salinas***, 307 A.3d 790, 795 (Pa. Super. 2023) (citation and brackets omitted). We will not disturb the trial court's exercise of discretion in upholding the verdict, which is supported by the record and does not "shock the conscience of th[is C]ourt." ***Arias***, 286 A.3d at 352 (citation omitted). Accordingly, Appellant's weight claim is without merit.

In his third and final claim, Appellant contends the trial court abused its discretion by imposing an unnecessarily harsh and excessive sentence. Because we have vacated Appellant's entire judgment of sentence, we need not address this claim.

In conclusion, we reverse Appellant's conviction of aggravated assault and affirm all other convictions. However, we vacate the judgment of sentence in its entirety and remand to the trial court for resentencing.

Appellant's aggravated assault conviction reversed. Judgment of sentence vacated. Case remanded for resentencing in accordance with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/8/2026

- 24 -